UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

JOHNNY ROUNDS, DONALD ROUNDS,
RICKY PROCTOR, LORENZO HUNT,
DeMARIO STEWART, and BRODERICK ROBINSON,

     Defendants.

**DECISION AND ORDER**
10-CR-239S (1)(2)(3)(4)(5)(8)

## I. INTRODUCTION

Presently before this Court are the parties' motions in limine seeking various forms of relief.[1] (Docket Nos. 593, 596, 598.) For the reasons that follow, the government's motion is denied without prejudice. Defendants' motions are deferred in part, granted in part, and denied in part.[2]

## II. BACKGROUND

The government alleges that Johnny Rounds is the leader of a violent criminal enterprise—the "Rounds Crew"—that conspired to engage in drug-trafficking and violent criminal activity in the Broadway Market area of the City of Buffalo, NY. Donald Rounds, Ricky Proctor, Lorenzo Hunt, DeMario Stewart, and Broderick Robinson are allegedly members of the Rounds Crew.

In 2009, the Rounds Crew began feuding with a rival group known as the "LRGP gang," which was trafficking drugs several blocks from where the Rounds Crew operated.

---

[1] Defendants Donald Rounds and Broderick Robinson filed Defendants' motions in limine, which their co-defendants join. See Docket No. 636.

[2] Defendant Lorenzo Hunt also filed motions in limine, in which the other defendants join. (Docket Nos. 599, 635.) Those motions will be resolved by separate Decision and Order.

The feud escalated when members of the LRGP gang allegedly broke into a Rounds Crew stash house and stole drugs, cash, jewelry, and clothing. Johnny Rounds allegedly told his crew that he wanted members of the LRGP dead in retaliation.

Soon after, members of the Rounds Crew began seeking out and shooting at LRGP members. LRGP members responded in kind. Amid the violence, three people were murdered: Brandon Haugabook; Larry Crosland; and Shawn Kozma. Defendants are now variously charged in a superseding indictment with these three murders and numerous drug-trafficking and firearms-related offenses. Trial begins November 3, 2015.

## III. DISCUSSION

Familiarity with facts and underlying arguments is presumed.

**A.    Government's Motion in Limine**

In its motion, the government seeks to preclude Defendants from referencing in any way that many of the charges in the superseding indictment were not prosecuted by state authorities or were previously dropped or dismissed by state authorities. The government contends that such references would mislead and confuse jurors concerning the trial issues, the applicable law, and their roles as jurors, and is therefore inadmissible under Rule 403 of the Federal Rules of Evidence. Defendants maintain that preclusion would infringe on their constitutional right to present a full and fair defense and to confront their accusers.

At this juncture, this Court does not have enough information to rule. From the briefing, it appears that there will be testimony and evidence presented at trial concerning investigations conducted and conclusions reached by various state law enforcement

agencies and officers. Some of that testimony and evidence may well be relevant and not unfairly prejudicial. Other portions, and perhaps argument stemming therefrom, may be relevant but unfairly prejudicial under Rule 403. Without hearing the evidence in context, this Court cannot enter a blanket pretrial ruling. The government's motion in limine is therefore denied as premature, without prejudice to the government raising this issue at an appropriate time during trial.[3]

**B.   Defendants' Motions in Limine**

Defendants seek six forms of relief in their first motion in limine: (1) to preclude autopsy, homicide, or shooting photographs or testimony describing autopsies; (2) to preclude testimony from a DEA special agent; (3) to direct the government to produce all remaining Brady and Giglio material immediately; (4) to direct the government to produce the presentence reports of its cooperating witnesses for *in camera* review and possible disclosure to defense counsel; (5) to preclude co-defendant statements to law enforcement; and (6) to preclude out-of-court statements under Rule 801(d)(2)(E) until the government independently establishes the existence of a conspiracy and its members.[4] (Docket No. 596.) In their second motion in limine, Defendants seek to preclude any government witness not previously disclosed. (Docket No. 598.) Defendants' requests are discussed in turn.

---

[3]The government relies in part on a recent oral ruling by the Honorable Richard J. Arcara in United States v. Epps, 12-CR-305A, yet it has not supplied a transcript of that ruling for this Court's consideration. If the government intends to raise this issue at trial and again rely on Epps, it should be prepared to provide a transcript of the relevant argument and ruling.

[4]Defendant Donald Rounds also seeks leave to join in his co-defendants' motions in limine. That request is granted.

1.   **Autopsy and Related Evidence**

Defendants seek to preclude the government from introducing testimony and photographs relating to the charged homicides and attendant autopsies of each of the three victims in this case. Defendants maintain that such evidence is irrelevant and unfairly prejudicial because they do not challenge the manners of death or any of the autopsy results. The government maintains that testimony from a medical examiner and some autopsy and related photographs must be introduced at trial to prove the allegations in the indictment.

Given the charges in this case, this Court finds that the government must be permitted to prove the manner and means of death through expert testimony and photographic evidence. Defendants' request for a blanket rule precluding such evidence is therefore denied. But this Court has not heard or seen the evidence the government intends to elicit or introduce. The government recognizes in its response to Defendants' motion that unfairly prejudicial photographs cannot be used. (Docket No. 611, p. 4.) The same holds true for unfairly prejudicial testimony.

The government has offered to consult with defense counsel to reach agreement on which photographs are appropriate to use at trial. (Docket No. 611, p. 4.) This Court orders that counsel confer and make their best efforts to agree on unobjectionable photographs as well as the scope of the medical examiners' testimony. For any testimony or photograph that remains in dispute, this Court will conduct argument outside the presence of the jury and determine whether the testimony or photograph is barred by Rule 403. The government is instructed not to reference or display any testimony or photograph that is not agreed upon or has not been deemed admissible by this Court.

**2.      DEA Special Agent**

In its expert witness disclosure, the government states that it intends to call a DEA Special Agent[5] to testify concerning (1) "the methods employed and utilized by unlawful dealers in marijuana to obtain, distribute, store, package, transport, collect money for the sale of, avoid detection from law enforcement, and secrete their marijuana;" (2) "the terms 'kush' and 'zona' as they relate to the types of marijuana sold by the defendants," including their potency, cost, and locations of origin; (3) "the methods used by individuals selling cocaine and crack cocaine;" and (4) "how these cocaine dealers will often store, conceal, possess, or use firearms in furtherance of and for the protection of their drug distribution and collection of money."  (Docket No. 578.)

Defendants move to preclude this testimony on the basis that it is not grounded in any specialized knowledge, experience, or training; is not based on sufficient facts or data; and is not the product of reliable principles or methods; as required by Rule 702 of the Federal Rules of Evidence.  They also maintain that the witness's testimony will be speculative and based on inadmissible hearsay.

Alternatively, Defendants seek further disclosure from the government concerning the DEA Special Agent's proffered testimony.  The government agrees to provide further disclosure. (Docket No. 611, p. 9.)  Given the risks inherent in the presentation of this type of expert testimony, see, e.g., United States v. Mejia, 545 F.3d 179, 188-200 (2d Cir. 2008) (discussing "the emergence of the officer expert"), this Court will order the requested additional disclosure from the government and defer ruling on Defendants' request.  The

---

[5]The government expects to call DEA Special Agent Christopher Wisniewski.

government is directed to disclose the information described in Rules 702, 703, and 705 of the Federal Rules of Evidence, as well as Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. The government must make its supplemental disclosure by October 20, 2015. This Court will then hear the government's proffer of the expected expert testimony and hear argument from both sides concerning admissibility at the final status conference on November 2, 2015.

### 3. Disclosure of Brady and Giglio Material

Defendants request the immediate production of all Brady and Giglio material. The government acknowledges its affirmative and continuing duty to provide Defendants with exculpatory and impeachment evidence under Brady and Giglio. The government also agrees to provide Defendants with

> "any promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, and all other promises or considerations given by government personnel to government witnesses or family members thereof."

(Docket No. 611, p. 10.)

Defendants' request for immediate disclosure is denied. The government is ordered to produce any materials referenced above currently in its possession by October 13, 2015. The government is further ordered to produce any materials referenced above that come into its possession after October 13, 2015, on an immediate and rolling basis.

### 4. Production and Review of Presentence Reports

Defendants seek an order requiring the government to produce the presentence reports of cooperating witnesses for *in camera* review and possible disclosure. When a co-defendant requests the presentence report of an accomplice witness, this Court is obligated to "examine the report in camera to determine if there are any statements made by the witness that contain exculpatory or impeachment material. If there is any such material, the judge should not release it unless there is 'a compelling need for disclosure to meet the ends of justice.'" United States v. Moore, 949 F.2d 68, 72 (2d Cir. 1991) (quoting United States v. Charmer Indus., Inc., 711 F.2d 1164 (2d Cir. 1983)).

In light of this Court's obligation under Moore, Defendants' request for *in camera* review of cooperating witnesses' presentence reports is granted. The government is directed to seek leave from the presiding judge to furnish sealed presentence reports to this Court for review under Moore. Such leave is hereby granted for any witness whose case this Court presided over. Upon receipt and review of the presentence reports, this Court will issue a further order regarding required disclosure, if any. Defendants' request for production and review of presentence reports is granted.

### 5. Co-defendants' Statements to Law Enforcement

Defendants seek an order precluding the government from introducing any statement made to law enforcement—in particular by co-defendant Ricky Proctor—that implicates other co-defendants. In the alternative, Defendants seek severance from Proctor. The government represents that it will not elicit or introduce any testimony or evidence that violates Bruton. (Docket No. 611, p. 12.)

In <u>Bruton</u>, the United States Supreme Court held that the admission of a non-testifying co-defendant's confession that implicates other co-defendants violates the Sixth Amendment's confrontation clause. <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); <u>see also</u> <u>United States v. Jass</u>, 569 F.3d 47, 55 (2d Cir. 2009) ("The crux of [the Confrontation Clause] is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination."). Preclusion, however, is not required when the statement can be sufficiently sanitized through redaction. <u>Jass</u>, 569 F.3d at 61.

> Redactions and substitutions can avoid <u>Bruton</u> error if the altered statement uses words "that might actually have been said by a person admitting his own culpability in the charged conspiracy while shielding the specific identity of his confederate." Along these lines, we have previously allowed proper names to be replaced with the following terms (among others): "another person," "others," "other people," and "another person,"; the pronoun "he,"; "this guy," "another guy," and "similar language,"; and "friend."

<u>United States v. Taylor</u>, 745 F.3d 15, 28-29 (2d Cir. 2014) (citations omitted).

Here, the government represents that it will not introduce any statements that implicate <u>Bruton</u>, or if it does, that it will sufficiently redact those statements such that there is no <u>Bruton</u> error. Although Defendants disagree that redactions will be effective, it is premature at this time to rule on this issue, the government not having offered any statements or redactions. All counsel are on notice to avoid causing <u>Bruton</u> issues. Should any <u>Bruton</u> issues arise at trial, this Court will resolve them then. Defendants' motion to preclude co-conspirator statements made to law enforcement or to sever Ricky Proctor is denied.

### 6. Co-conspirators' Hearsay Statements

The government has indicated that it will seek to introduce co-conspirator statements at trial as non-hearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Under that rule, out-of-court statements are not considered hearsay if the statements are offered against the opposing party and were made by the party's coconspirator during and in furtherance of the conspiracy. Such statements can be admitted if the government establishes by a preponderance of the evidence "that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy." United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *22 (E.D.N.Y. Apr. 22, 2015) (citing Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). In making preliminary determinations of admissibility under Rule 104(a), the court may consider the statements, which are presumptively unreliable, but there must also be independent corroborating evidence of the defendant's membership in the conspiracy. See United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996).

Defendants request an order requiring the government to make a proffer outside the jury's presence concerning the admissibility of any statements it seeks to introduce under Rule 801(d)(2)(E) rather than be permitted to "connect up" the statements through subsequent testimony. Defendants believe that this will avoid a possible mistrial if the government is unable to "connect up" its evidence.

In this Court's view, it is unnecessary to require the proffers that Defendants seek. The government is keenly aware of what it must establish to admit co-conspirator

statements under the rule and that it must have a good-faith basis to request "connecting up" its evidence. At this time, Defendants' request to require the government to make specific proffers outside the presence of the jury is denied.

### 7. Preclusion of Government Witnesses

Defendants seek an order precluding the government from calling any witness not previously disclosed. This Court has already directed the government to pare down its witness list by October 20, 2015. (Docket No. 620.) For any witness that the government seeks to call who does not appear on the government's October 20, 2015 witness list, the government will be required to show good cause why (1) the witness was not previously identified and disclosed, and (2) the witness should be permitted to testify at trial. At this time, however, this Court will not, as a general matter, preclude the government from calling a witness not identified on its October 20, 2015 witness list. Defendants' request for such relief is therefore denied.

### IV. CONCLUSION

For the reasons stated above, the government's motion in limine is denied without prejudice. Defendants' motion in limine is deferred in part, granted in part, and denied in part.

### V. ORDERS

IT HEREBY IS ORDERED, that the government's Motion in Limine (Docket No. 593) is DENIED without prejudice.

FURTHER, that Defendants' Motion in Limine (Docket No. 596) is DEFERRED in part, GRANTED in part, and DENIED in part.

FURTHER, that Defendants' Motion in Limine (Docket No. 598) is DENIED.

SO ORDERED.

Dated:    October 9, 2015
         Buffalo, New York

                                                    <u>/s/William M. Skretny</u>
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge