UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

JOHNNY ROUNDS, DONALD ROUNDS,
RICKY PROCTOR, LORENZO HUNT,
DeMARIO STEWART, and BRODERICK ROBINSON,

    Defendants.

**DECISION AND ORDER**
10-CR-239S (1)(2)(3)(4)(5)(8)

## I. INTRODUCTION

Presently before this Court are Defendant Lorenzo Hunt's first and second motions in limine.[1] (Docket Nos. 599, 635.) For the following reasons, Hunt's first motion is granted in part and denied in part. Hunt's second motion is denied.

## II. BACKGROUND

The government alleges that Johnny Rounds is the leader of a violent criminal enterprise—the "Rounds Crew"—that conspired to engage in drug-trafficking and violent criminal activity in the Broadway Market area of the City of Buffalo, NY. Donald Rounds, Ricky Proctor, Lorenzo Hunt, DeMario Stewart, and Broderick Robinson are allegedly members of the Rounds Crew.

In 2009, the Rounds Crew began feuding with a rival group known as the "LRGP gang," which was trafficking drugs several blocks from where the Rounds Crew operated. The feud escalated when members of the LRGP gang allegedly broke into a Rounds Crew stash house and stole drugs, cash, jewelry, and clothing. Johnny Rounds allegedly told

---

[1] Defendant Donald Rounds's motion to join Hunt's second motion in limine (Docket No. 638) will be granted. The other co-defendants have already been granted leave to join Hunt's motions. (Docket No. 636.)

his crew that he wanted members of the LRGP dead in retaliation.

Soon after, members of the Rounds Crew began seeking out and shooting at LRGP members. LRGP members responded in kind. Amid the violence, three people were murdered: Brandon Haugabook; Larry Crosland; and Shawn Kozma. Defendants are now variously charged in a superseding indictment with these three murders and numerous drug-trafficking and firearms-related offenses. Trial begins November 3, 2015.

### III. DISCUSSION

Familiarity with facts and underlying arguments is presumed.

Hunt seeks six forms of relief in his motions: (1) to preclude DNA reports concerning a rifle, a rifle sling, and a towel;[2] (2) to preclude the in-court identification of Hunt; (3) to preclude the in-court identification of the Kozma murder weapon; (4) to preclude co-conspirators' statements; and (5) to preclude co-defendants' statements, or in the alternative, to sever.[3] (Docket Nos. 599, 635.) Defendants' requests are discussed in turn.

**1.　DNA Reports**

Hunt seeks to preclude reports relating to DNA testing done on a rifle, a rifle sling, and a towel, or, in the alternative, to hold a pretrial hearing to examine the admissibility of the reports. Each of these pieces of evidence is tied to the Kozma murder, which the government alleges Hunt committed.

Through its expert witness, Senior Forensic Serologist Kristen Betker, the

---

[2]Hunt's second motion in limine focuses exclusively on seeking to preclude DNA evidence relating to the towel. (See Docket No. 635.)

[3]Hunt also seeks leave to join his co-defendants' motions in limine. That request is granted.

2

government conducted DNA testing on the rifle, rifle sling, and towel, comparing Hunt's known DNA to the DNA swabs collected from the items. Among other findings, the reports conclude that Hunt cannot be excluded as a contributor to the DNA swab taken from the rifle and sling. (Docket No. 599-3.) Hunt (and Donald Rounds) could not, however, be connected to the towel because "the DNA typing results obtained from the towel cannot be used for inclusionary comparison purposes to [his] known buccal specimens." (Docket No. 635, p. 2.)

Hunt seeks preclusion of the reports relating to the rifle and the sling on the basis that the methodology employed in them is fatally flawed. Specifically, Hunt challenges the report's probability analysis—the probability of randomly selecting an unrelated individual as a possible contributor to the DNA profile—because it does not account for what the parties know to be one of Hunt's relative's DNA contributing to the rifle and sling DNA swab. Hunt seeks preclusion of the report relating to the towel on the basis that it is inconclusive. In support of both motions, Hunt relies on the report of forensic mathematician Charles H. Brenner, Ph.D., whom he may presumably call as an expert witness. (Docket No. 652-1.)

In response to Hunt's motion, the government argues that Hunt's attack on the methodology contained in the report is unsupported speculation. It states that Betker will testify about the correctness of her methodology, analysis, and conclusions. It further maintains that Hunt's challenges to the DNA reports go to the proper weight to be afforded the evidence, not to its admissibility.

Having considered the parties' arguments, this Court finds that neither preclusion nor a pretrial hearing are warranted. In its "gatekeeper role," a court must make "a

preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." See Daubert v. Merrel Dow Parms, Inc., 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Here though, Hunt does not challenge the scientific validity of the methodology that Betker employs in her reports. (See Docket No. 634, p. 5.) Rather, Hunt challenges the reliability of Betker's probability analysis based on what he alleges is a false factual premise—that no related individuals contributed to the DNA swab.[4] But challenges to reliability and assertions of factual error in the application of a given methodology go to the weight of the evidence, not to admissibility. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995) (finding that disputes as to faults in methodology go to the weight, not the admissibility, of expert testimony); see also Perkins v. Origin Medsystems, Inc., 299 F. Supp. 2d 45, 60 (D.Conn. 2004) (finding that challenge to expert witness's opinion as not reliably based on her application of methodology went to weight, not admissibility). Hunt will, of course, have a full and fair opportunity for cross-examination, which, rather than preclusion, is the proper mode for exposing any weaknesses in the expert's opinions. Consequently, Hunt's requests to preclude DNA evidence or to conduct a pretrial hearing are denied.

      This Court pauses to note its concern, however, with how the government intends to present its DNA evidence concerning the towel. As this Court understands it, the DNA swab from the towel could not be used to conduct an inclusionary comparison to DNA known to be from Hunt and Donald Rounds. Depending on how the government intends

---

[4] Indeed, Brenner's report includes a section entitled "Disagreement with prosecution mixture analysis." (Docket No. 652-1.)

to use this evidence, it may or may not be relevant or probative. Consequently, before DNA evidence relating to the towel is offered at trial, this Court will hear argument concerning how the government intends to use the evidence and whether it is admissible under the Federal Rules of Evidence.

### 2. In-court Identification of Hunt

Hunt anticipates that several of the government's witnesses will be asked to identify him at trial without ever having engaged in any out-of-court identification procedures. This, he contends, puts him at a distinct disadvantage, because he, an African-American, will be sitting next to his Caucasian defense attorney, resulting in an unfairly suggestive identification procedure. Hunt therefore requests an order requiring the government to provide the foundation for any in-court identification outside the presence of the jury. The government does not meaningfully respond to Hunt's request.[5]

"Where the circumstances of . . . an at-trial identification are suggestive, reliability is the linchpin for determining admissibility." United States v. Matthews, 20 F.3d 538, 547 (2d Cir. 1994) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). But "[e]ven an identification at trial under circumstances that are tantamount to a showup is 'not per se inadmissible, but rather depend[s] upon the 'totality of the circumstances.'" Id. (quoting United States v. Archibald, 734 F.2d 938, 942 (2d Cir. 1984)).

Because an at-trial identification in some circumstances could be "tantamount to a showup," the Second Circuit has held that "the trial court has discretion to take steps to avoid any unfairness in the in-court identification." Matthews, 20 F.3d at 547. The Court

---

[5]The government's response re-states legal principles that apply when a witness's pretrial identification is challenged. Here, however, no pretrial identification proceedings have occurred.

is not required to take such steps *sua sponte*, however; it is incumbent on the defendant to request measures designed to ameliorate any suggestiveness. See id. For example, a defendant may request "to be seated somewhere other than at the counsel table, or not to be present, or to be placed in a lineup prior to the in-court identification." Id.

Hunt requests an order requiring the government to provide the foundation for any in-court identification outside the presence of the jury. In the absence of an objection by the government, and to assist in determining whether any measures need be taken as contemplated in Matthews, this Court will require a proffer from the government outside the jury's presence before any witness's in-court identification of Hunt. This Court will then determine what, if any, measures must be taken to ameliorate any unfair suggestiveness. Consequently, Hunt's request is granted.

### 3. In-court Identification of the Kozma Murder Weapon

Similar to his request concerning his in-court identification, Hunt requests an order requiring the government to provide the foundation for any in-court identification of the weapon used in the Kozma murder. This request is not supported by any legal authority, but rather, is premised on Hunt's belief that there is no credible or physical evidence linking the weapon to the Kozma murder. The government, however, contends that the weapon will be tied to the Kozma murder through both witness testimony and the DNA evidence discussed above.

In light of the government's representation that it will present testimony and evidence connecting the weapon to the Kozma murder, this Court finds no basis to grant Hunt's request for a preview of the government's evidence. Hunt will have a full and fair

opportunity to challenge the government's evidence on cross-examination. In the absence of any authority requiring the foundational proffer that he seeks, Hunt's request is denied.

### 4. Co-conspirators' Statements

The government has generally indicated that it will seek to introduce co-conspirator statements at trial as non-hearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence. Under that rule, out-of-court statements are not considered hearsay if the statements are offered against the opposing party and were made by the party's co-conspirator during and in furtherance of the conspiracy. Such statements can be admitted if the government establishes by a preponderance of the evidence "that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy." United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *22 (E.D.N.Y. Apr. 22, 2015) (citing Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). In making preliminary determinations of admissibility under Rule 104(a), the court may consider the statements, which are presumptively unreliable, but there must also be independent corroborating evidence of the defendant's membership in the conspiracy. See United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996).

Hunt moves to preclude co-conspirator statements that may have been overheard by two anticipated government witnesses after the conspiracy alleged in the indictment ended. Despite the timing of these statements, the government's position appears to be that it will establish admissibility under the rule at trial. As this Court noted in its previous decision resolving motions in limine, the government is aware of what it must establish for

the admission of co-conspirator statements under Rule 801(d)(2)(E). See United States v. Rounds, No. 10-CR-239S, 2015 WL 5918372, at *5 (W.D.N.Y. Oct. 9, 2015). Because this Court is currently unaware of the specific statements that will be offered and the circumstances surrounding them, it will deny Hunt's request for a pretrial ruling and will resolve any further objection at the time the statements are offered.

### 5. Co-defendants' Statements

Hunt seeks an order precluding the government from introducing evidence concerning death threats that co-defendant DeMario Stewart allegedly made against a potential trial witness while he was incarcerated. This request is now moot because the government has indicated that it does not object to a Report and Recommendation issued by the Honorable Hugh B. Scott, which recommends that this evidence be suppressed as obtained in violation of Stewart's Sixth Amendment right to counsel. (See Docket Nos. 648, 661.) This Court will accept Judge Scott's Report and Recommendation by separate order. Consequently, this request is moot.

## IV. CONCLUSION

For the reasons stated above, Hunt's motions in limine are granted in part and denied in part.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant Donald Rounds's Motion to Join Defendant Lorenzo Hunt's Second Motion in Limine (Docket No. 638) is GRANTED.

FURTHER, that Defendant Lorenzo Hunt's First Motion in Limine (Docket No. 599) is GRANTED in part and DENIED in part.

FURTHER, that Defendant Lorenzo Hunt's Second Motion in Limine (Docket No. 635) is DENIED.

SO ORDERED.

Dated:	October 26, 2015
	Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge