UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHNNY ROUNDS,

                              Petitioner,

        v.                                            **DECISION AND ORDER**
                                                      18-CV-1000S
UNITED STATES OF AMERICA,                             10-CR-239S (1)

                              Respondent.

## I. INTRODUCTION

Presently before this Court is Petitioner Johnny Rounds's pro se Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 (Docket No. 849).  For the reasons discussed below, Rounds's motion is denied.

## II. BACKGROUND

On November 10, 2015, Rounds appeared before this Court and pleaded guilty to Counts 1 and 3 of the superseding indictment against him.  See Docket Nos. 163, 695, 701.  Count 1 charged Rounds with violating 18 U.S.C. § 1962 (d) (racketeering conspiracy involving murder).  Count 3 charged him with violating 21 U.S.C. § 848 (a) (operating a continuing criminal enterprise).

Rounds pleaded guilty with the benefit of a plea agreement, in which he agreed that his maximum possible sentence by statute for Count 1 was a term of life imprisonment, a fine of $250,000, a mandatory special assessment of $100, and a term of supervised release of five years; and that his maximum possible sentence by statute for Count 3 was a term of life imprisonment (with a mandatory minimum imprisonment term of 20 years), a fine of $2,000,000, a mandatory special assessment of $100, and a

1

term of supervised release of five years.  See Plea Agreement, Docket No. 695, ¶ 1.

Rounds further agreed that for purposes of the Sentencing Guidelines, he had a combined total offense level of 44 and a criminal history category of I, which resulted in a Guidelines sentencing range of life imprisonment, a fine of $25,000 to $2,000,000, and a term of supervised release of 2 to 5 years.[1]  Id. ¶¶ 6-15.  Notwithstanding these calculations, however, Rounds and the government agreed under Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure that this Court should impose sentence within the range of 240 to 300 months' imprisonment.  Id. ¶ 16.

On June 29, 2016, this Court accepted the Rule 11 (c)(1)(C) provision of the plea agreement and sentenced Rounds to 300 months' imprisonment on each count to run concurrently, no fine, 5 years' supervised release on each count to run concurrently, restitution of $1,500, and a $200 special assessment, a sentence that fell within the range of the parties' agreement.  See Docket Nos. 795, 797.  The Clerk of Court entered judgment on July 7, 2016.  See Docket No. 797.

Rounds filed Notices of Appeal on July 6 and July 18, 2016.  See Docket Nos. 796, 803.  On August 10, 2017, the United States Court of Appeals for the Second Circuit granted the government's motion to dismiss Rounds's appeal and to summarily affirm his conviction and sentence.  See Docket No. 845.  The court dismissed Rounds's appeal of his terms of imprisonment and supervised release as barred by the appeal waiver in his plea agreement and summarily affirmed with respect to Rounds's appeal of his conviction and special assessment.  See id.  The court entered its mandate on September 14, 2017.

---

[1] At sentencing, this Court determined that Rounds's total offense level was 43 and his criminal history category was III.  See Docket No. 795.

See id.

Rounds filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on September 13, 2018.  See Docket No. 849.  After full briefing, including Rounds's supplemental submission, this Court took the motion under advisement without oral argument on November 4, 2019.  See Docket Nos. 849, 852, 854, 859, 860.

## III. DISCUSSION

**A.    § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12

(2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  But an exception exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition."  Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of non-constitutional, non-jurisdictional claims that could have been raised on direct appeal,

unless the petitioner shows cause for failing to raise the claims on direct review and actual prejudice or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Brennan v. United States, 867 F.2d 111, 117 (2d Cir. 1989) ("non-constitutional and non-jurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal").  To satisfy the cause component, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993).  To satisfy the prejudice component, the petitioner must demonstrate prejudice that creates an "actual and substantial disadvantage, infecting . . . error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  To establish actual innocence, the petitioner must show "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley, 523 U.S. at 623 (internal quotation marks and citation omitted).  But this rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.  See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

In addition to these two rules, waiver principles also apply.  It is by now well established that a knowing, voluntary, and competent waiver made as part of a plea agreement is presumptively and generally enforceable.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "An enforceable waiver bars claims based on grounds that arose after, as well as before,

the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)).  Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement.  See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[2]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]."

---

[2] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8 (c).  A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims).  However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible."  Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.  See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Ultimately, the petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence.  See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.    Rounds knowingly, voluntarily, and competently waived his rights to appeal and collaterally attack his sentence.**

A defendant's knowing, voluntary, and competent waiver of his right to appeal and

collaterally attack his sentence is presumptively enforceable.  See Riggi, 649 F. 3d at 147.  Because a valid waiver provision itself may bar a petitioner's claims, enforceability must be determined as a threshold matter.

To determine whether a challenged waiver is enforceable, courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001).

Rounds challenges the validity of his waiver on ineffective-assistance-of-counsel grounds.  He maintains that his waiver is unenforceable because (1) Attorney LoTempio[3] failed to properly explain Rule 11 (c)(1)(C), thereby rendering Rounds's guilty plea (and waiver) unknowing (see Docket No. 849, pp. 18, 23-24); and (2) Attorney LoTempio insisted that Rounds plead guilty and enlisted Rounds's family to pressure him into doing so, thereby rendering Rounds's plea and waiver involuntary (see id. pp. 18-19). Neither claim has merit.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003)

---

[3] Rounds had multiple lawyers.  Because this was a death-eligible case, Rounds was assigned both trial and learned counsel—Angelo Musitano, Esq., and William T. Easton, Esq., respectively.  After Attorney Musitano was forced to withdraw, new trial counsel Andrew C. LoTempio, Esq., joined Attorney Easton as co-counsel.

(quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

To succeed on his ineffective-assistance-of-counsel claims, Rounds must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, Rounds must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  Id. at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689 (internal citation omitted).  The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the Strickland test, Rounds must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See Strickland, 466 U.S. at 687, 694.  The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693.  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial."  Id. at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test.  Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Here, Rounds's claims fail to meet the Strickland test because they are flatly refuted by both the plea agreement and the plea allocution, which demonstrate that Rounds entered his plea and waiver with full understanding of Rule 11 (c)(1)(C) and without pressure or coercion.

First, in his plea agreement, Rounds acknowledged his rights to appeal and collaterally attack his sentence and then knowingly agreed to waive them as follows:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than a sentencing range for imprisonment of 240 to 327[4] months, and the range for a fine and supervised

---

[4] The inclusion of 327 months was an oversight.  Just before Rounds entered his plea, his lawyers re-

release set forth in Section III, ¶ 15 [Guidelines' Application, Calculations and Impact], above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

Plea Agreement, ¶¶ 22, 23.

Rounds further acknowledged that he had read the plea agreement, that he had a full opportunity to discuss the terms of the plea agreement with his lawyers, that the agreement represented the total agreement between himself and the government, that no promises or representations other than those contained in the plea agreement were made to him, that he understood all of the consequences of his guilty plea, that he fully agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will. Id. ¶ 25 and p. 13.

Second, as it relates to Rounds's understanding of Rule 11 (c)(1)(C), the rule and its application are explicitly stated in the plea agreement, which, again, Rounds acknowledged that he read, understood, and had a full opportunity to discuss with his lawyers. (Plea Agreement, ¶¶ 16, 17 and p. 13.) In addition, this Court explained the general parameters of a Rule 11 (c)(1)(C) plea at a status conference on the eve of Rounds's plea. (Status Conference Transcript, Docket No. 767, p. 25.) Then during the

---

negotiated the high end of the Rule 11 (c)(1)(C) range down from 327 to 300 months. See Plea Transcript, p. 2. That change is reflected in the handwritten notations and initials on page 9 of the plea agreement. The same change should also have been made to the waiver provision, but due to oversight, was not.

plea allocution itself, Rounds confirmed his satisfaction with his lawyers and his understanding of the rule:

| Court: | Okay. I take it, Johnny Rounds, to this point you are satisfied with both of your attorneys, William Easton and Andrew LoTempio? |
|---|---|
| Defendant: | Yes, sir. |

* * *

| Court: | . . . We're talking about numbers and letters [that] you probably haven't heard about all that much before, but now they are a regular part of what the discussions are and that's a Rule 11 (c)(1)(C), correct? |
|---|---|
| Defendant: | True. |

* * *

| Court: | *[After Rounds confirmed his understanding of the statutory penalties]* . . . And that what we're talking about when we address each of those two charges are statutory maximum[s] and even with those charges I have discretion within the ranges relating to the statutory maximum for purposes of imposing sentence here. Do you understand that? |
|---|---|
| Defendant: | Yes. |
| Court: | And that's how 11 (c)(1)(C) is made possible because that's an agreement with reference to a commitment from me that the sentence that you get in the aggregate is a sentence that might ordinarily be less than the guideline range for the crimes committed. Do you understand that? |
| Defendant: | Yes, sir. |

* * *

| | |
|---|---|
| Court: | Drop down to [paragraph] 16 because this is where we start talking the flexibility that can be negotiated and when you talk life at the guideline range there is a big difference, at least on paper, between a period of time like 20 years and life, right?  You could live to be pretty darn [old] and 20 years would be shorter than that, right? |
| Defendant: | Right. |
| Court: | Okay.  So here's the deal as set out in the 11 (c)(1)(C), paragraph 16.  It's the position, and this is where the numbers changed a little bit, that the appropriate sentence should be between 240 which is twenty years and 300 months for you in this particular case.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Okay, and I'm going to look at that and given the seriousness of the crime, the interest of the government and the public, and the fact that you should be given a sentence that is sufficient but not greater than necessary, I'll look at whether I can impose a sentence within that range.  If I cannot, and I tell both sides, you can withdraw your plea, the government can withdraw the deal.  Do you understand? |
| Defendant: | Yes, sir. |

* * *

| | |
|---|---|
| Court: | Mr. Rounds, I'm convinced that as to your pleas of guilty, separately considered and knowing, you understand the terms, conditions, and possible consequences, correct? |
| Defendant: | Correct. |

(Plea Transcript, Docket No. 763, pp. 4, 5, 10-11, 16-17, 21.)

It is thus apparent from the record that contrary to Rounds's present allegations,

he had full knowledge and understanding of Rule 11 (c)(1)(C) at the time of his allocution and agreed to its inclusion and application in his plea agreement.

Third, as it relates to Rounds's contention that Attorney LoTempio insisted that he plead guilty and enlisted his family members to pressure him into doing so, the record belies the claim.   Rounds specifically acknowledged in the plea agreement that he understood the consequences of his plea, that he fully agreed with the contents of the agreement, and that he signed the agreement voluntarily and of his own free will.  (Plea Agreement, p. 13.)  And again, the plea allocution confirms that Rounds entered his plea voluntarily:

| | |
|---|---|
| Court: | Okay.  I take it, Johnny Rounds, to this point you are satisfied with both of your attorneys, William Easton and Andrew LoTempio? |
| Defendant: | Yes, sir. |

* * *

| | |
|---|---|
| Court: | You signed [the plea agreement], fair to say, voluntarily? |
| Defendant: | Yes, sir. |

* * *

| | |
|---|---|
| Court: | Fair statement that everything you did here today from A to Z was voluntary; no force, threats or violence or intimidation to get you to do this? |
| Defendant: | Correct. |

(Plea Transcript, Docket No. 763, pp. 4, 20, 21.)

The record thus demonstrates that Rounds entered his plea voluntarily, without force or threat.

Consequently, having thoroughly reviewed the record, this Court finds that both the plea agreement and the plea allocution demonstrate Rounds's understanding of Rule 11 (c)(1)(C) and the voluntary nature of his plea.  This Court therefore finds that Rounds entered his guilty plea and the waiver provisions knowingly, voluntarily, and competently, and did not do so as the result of ineffective assistance of counsel.

**C.    Rounds's remaining claims fail.**

Construing Rounds's submissions and arguments liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that he brings the following additional claims.  First, he alleges that his trial counsel was ineffective by (1) failing to communicate with him and present him with a plea offer from the government in February 2015 (see Docket No. 849, p. 17); (2) failing to properly investigate his case (see id. pp. 18, 23-24); and (3) failing to challenge the conditions of his pretrial confinement (see id. p. 19).  Second, he claims that he was denied his right to counsel in 2015 when he was allegedly unrepresented for more than 10 weeks.  See id. pp. 18, 23.  Third, he claims that his speedy trial rights were violated.  See id. pp. 19, 24-25; Docket No. 852.  Fourth, he alleges prosecutorial misconduct.  See Docket No. 849, pp. 20-21, 26; Docket No. 852, pp. 9-10.[5]  And finally, Rounds claims that he is actually innocent.  See Docket No. 849, p. 22.

Having found that Rounds knowingly, voluntarily, and competently waived his collateral-attack rights, this Court must enforce the waiver.  Cf. United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers included in

---

[5] Rounds also alleged judicial misconduct, but withdrew that claim in his supplemental filing.  See Docket No. 852, p. 2 ("Having further reflected on the proceeding and the record, Rounds dismisses Issue 4 (Judicial misconduct).").

plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."). While there are narrow exceptions to the general enforceability of waivers, none of them apply here. A waiver provision is presumptively enforceable other than

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)). Since none of these exceptions apply, this Court must enforce the waiver provision of the plea agreement.

A valid "waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz, 360 F. Supp. 2d at 577. A valid guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"). And the Second Circuit has "long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." Garcia-Santos, 273 F.3d at 509 (citing United States v. Yemitan, 70 F.3d 746, 747-48 (2d

Cir. 1995)); <u>see also</u> <u>United States v. Harrison</u>, 699 F.3d 158, 159 (2d Cir. 2012) (per

curiam) (finding that the petitioner's "inability to foresee that subsequently decided cases

would create new appeal issues does not supply a basis for failing to enforce an appeal

waiver") (quoting <u>Riggi</u>, 649 F.3d at 150 n. 7 )); <u>Medina v. United States</u>, 16 Civ. 5043

(AT)(JCF), 94 Cr. 0872 (SAS)(JCF), 2017 WL 476670, at *2 (S.D.N.Y. Feb. 3, 2017)

(citing <u>Garcia-Santos</u> in rejecting a petitioner's argument that his waiver was not knowing

and voluntary "because he could not have known 'that he was also waiving a right that

didn't exist at the time of the guilty plea'").  The same is true for enforcement of waivers

of collateral attack under § 2255.  See <u>Garcia-Santos</u>, 273 F.3d at 509 ("The reasons for

enforcing waivers of direct appeal [when the grounds for appeal arose after the plea

agreement was entered into] lead us to the same conclusion as to waivers of collateral

attack under § 2255.").

As it relates first to Rounds's remaining ineffective-assistance-of-counsel claims,

they are not the type that fall outside of the waiver.  "[A] waiver of appellate or collateral

attack rights does not foreclose an attack on the validity of the process by which a waiver

has been procured," such as a plea agreement.  <u>Frederick v. Warden, Lewisburg Corr.</u>

<u>Facility</u>, 308 F.3d 192, 195 (2d Cir. 2002).  A waiver may thus be unenforceable if the

petitioner has a meritorious claim that it was procured as the result of ineffective

assistance of counsel.  See <u>United States v. Monzon</u>, 359 F.3d 110, 118-19 (2d Cir.

2004); <u>see</u> <u>El Saleh v. United States</u>, 13-CV-1567 (DLI), 2016 WL 4734601, at *3

(E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the

decision to enter a plea agreement was the product of counsel's ineffective assistance")

(citing <u>Hernandez</u>, 242 F.3d at 114)).  Thus, "[a]n ineffective assistance of counsel claim

17

survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel" that informed his or her decision to enter the guilty plea. Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added).

This is because, if a petitioner challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver. Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim."). In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not. See id. at *5.

Rounds's remaining ineffective-assistance-of-counsel claims do not relate to the plea process. Again, Rounds claims that Attorney Musitano failed to communicate with him in September 2014 and failed to present him with an earlier plea offer from the government in February 2015, that Attorney LoTempio failed to properly investigate his case; and that Attorney LoTempio failed to challenge the conditions of his pretrial confinement. Because these claims do not relate to the plea process, they do not survive the valid, enforceable waiver. See Mitchell v. United States, Case Nos. 14-CV-6350-FPG, 11-CR-6019-FPG, 2020 WL 587883, at *7 (W.D.N.Y. Feb. 6, 2020) (finding pre-

plea ineffective-assistance-of-counsel claims barred by valid waiver where they pertained solely to pre-plea errors that did not pertain to the plea process); United States v. Hill, Nos. 13 Civ. 1107 (LAP), 11 Cr. 145 (LAP), 2014 WL 104565, at *7 (S.D.N.Y. Jan. 7, 2014) (holding that valid waiver bars failure-to-investigate and other pre-plea claims); United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (finding that only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may "[c]laims of ineffective assistance of counsel . . . survive § 2255 waivers").

As it relates to Rounds's claim that he was denied his right to counsel for more than 10 weeks in 2015 after Attorney Musitano was forced to withdraw, this Court finds that it is barred by both the waiver and the mandate rule because Rounds unsuccessfully raised it on appeal. See Docket No. 849, p. 4. Moreover, Rounds's claim is factually incorrect. Because this was a death-eligible case, Rounds was represented by two highly skilled attorneys—Attorneys Easton and Musitano. While it is true that Attorney Musitano was forced to withdraw, Attorney Easton remained as counsel at all times, with Attorney LoTempio later joining him as co-counsel. See Docket Numbers 457, 463, 474, 482, 489, 493. At no time was Rounds left unrepresented. Consequently, Rounds's right-to-counsel claim fails.

As it relates to Rounds's speedy-trial claim, it too is barred by the plea waiver and the procedural-default rule because Rounds failed to raise it on direct appeal and does not now demonstrate good cause for that failure. See Bousley, 523 U.S. at 622-23; see also Tollett, 411 U.S. at 267 (holding that a valid admission of guilt precludes claims relating to the alleged deprivation of constitutional rights that occurred before the plea was entered). Rounds claims only that he "was not advised by counsel and thought [he]

19

could not raise the ground because [he] had waived the right."  Docket No. 849, p. 6.  This does not constitute cause: "The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."  Gupta v. United States, 913 F. 3d 81, 85 (2d Cir. 2019).   Moreover, Rounds's reliance on speedy-trial cases that post-date his sentencing are unavailing because even if considered "new law" such do not overcome the waiver.  See United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005) (holding that a defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver.  On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").  Accordingly, Rounds's speedy-trial claim fails.

As it relates to Rounds's claims that the prosecutor engaged in misconduct by falsely claiming that he was a member of the fictitious "Rounds Crew," by pursuing his prosecution due to media pressure, and by failing to abide by a promise to recommend a 22-year sentence, they are barred by both the waiver and the mandate rule since Rounds raised them in his unsuccessful appeal.  See Docket No. 849, p. 7.  In addition, Rounds's assertion that the prosecutor made a sentencing promise is refuted by the plea agreement, in which Rounds twice acknowledged under oath that no promises or representations were made to him other than those contained in the written document. See Plea Agreement, pp. 12, 13.  This claim therefore fails.

Finally, Rounds's naked claim of actual innocence fails.  See Docket No. 849, pp. 12, 22.  The entirety of Rounds's claim is one sentence:  "I was never associated with any

homicides or gang activities."   Id. p. 22.   This is wholly deficient; a claim of actual innocence requires a much stronger showing.   To establish actual innocence, Rounds must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."   Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).   Rounds's bare claim does not approach this standard. See United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) (finding that a claim of actual innocence "must be supported by evidence").

Consequently, for the reasons stated above, this Court finds that Rounds's claims fail.

**D.   Evidentiary Hearing**

As indicated above, § 2255 provides that a court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, this Court finds that no evidentiary hearing is warranted or required because Rounds's motion and the record conclusively demonstrate that Rounds is not entitled to relief under § 2255.   See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**E.     Certificate of Appealability**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Rounds must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Rounds has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

For the reasons stated above, Rounds's Motion to Vacate, Set Aside or Correct his Sentence is denied.  If Rounds wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 849) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this

Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 18-CV-1000S.

FURTHER, that the Clerk of Court is directed to mail a copy of this decision to Petitioner at his current institutional address and to update his address on the docket accordingly:

> Mr. Johnny Rounds (Reg. No. 25551-058)
> FCI Allenwood Low
> Federal Correctional Institution
> P.O. Box 1000
> White Deer, PA  17887

SO ORDERED.


Dated:      April 22, 2021
            Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge